EFIRD v. WESTERN UNION TELEGRAPH CO.

(Filed March 31, 1903.)

TELEGRAPHS—*Negligence—Contributory Negligence—Mental Anguish—
Messages.*

Where the wife delivers to a telegraph company a message for her
husband to come home as "Ira" was sick, but in transmission
the name was changed to "Car.," and on receipt of the message
the husband requests the agent of the company to ascertain
from the relay office whether the message was correct, and was
informed that it was correct, the plaintiff husband having a
child named Ira and a nephew named Carl, and thinking that it
was his nephew that was sick did not return home until after
receiving a message the next day of the death of his child, un-
der these facts is not guilty of contributory negligence.

ACTION by J. E. Efird against the Western Union Tele-
graph Company, heard by Judge *W. S. O'B. Robinson* and
a jury, at October Term, 1902, of the Superior Court of
UNION County.

ISSUES.

1. Was the defendant guilty of negligence in the trans-

mission and delivery of the dispatch, as alleged in the complaint?

Answer:  "Yes."

2.  Did the plaintiff, by his own negligence, contribute to his injury, as alleged in the answer?

Answer: "Yes."

3.  What damage, if any, has the plaintiff sustained by reason of the negligence of the defendant, as alleged in the complaint?

Answer: ......

4.  Did the plaintiff pay the defendant the sum of twenty-five cents for the transmission of the telegram set out in the complaint, and is plaintiff entitled to recover the same?

Answer: "Yes.

From a judgment for the plaintiff for twenty-five cents, he appealed.

*Adams & Jerome,* for the plaintiff.

*F. H. Busbee & Son* and *Jones & Tillett,* for the defendant.

CLARK, C. J.   The plaintiff's wife delivered to the defendant's agent at Monroe, N. C., the following dispatch signed by her and addressed to her husband at Albemarle, N. C.:

"Ira very sick.   Croup and sore throat.   Can you come?"

When delivered to the plaintiff it read:

"Car. very sick.   Sroup and sore throat.   Can you come?"

The plaintiff had three children who were named Ira, Grace and May.   His brother-in-law next door had a son named Carl from whom one of plaintiff's children had contracted scarlet fever the year before, and he had cautioned his wife against allowing his children to play with Carl and he understood "Car." to mean Carl.   He 'phoned down to the telegraph office at the depot and asked if the

message was correct. A friend of his, at the plaintiff's instance (the plaintiff standing by his side), asked the operator to spell the name and he repeated it over the 'phone "Car.". He then requested the operator to wire back to Salisbury where the message had been relayed and ask if the message was correct. They waited at the 'phone five or ten minutes, when the operator replied that he had gotten Salisbury and that the message was correct. Being thus satisfied it was not his child, the plaintiff did not go home but wrote his wife. His wife says she looked for her husband that day in response to the telegram sent early in the morning and expected him that night, and "the little girl kept asking for him during the night; we told her that we expected him soon; we left his supper on the stove and put in feed for his team, and the next morning she said she wish she could see papa come, and grandma said that maybe he would when daylight came, but instead the death Angel came." It was in evidence that from Monroe to Albemarle was thirty-six miles, and it is admitted that the incorrectly delivered message was delivered at 10:30 A. M. It was also in evidence that when next day the plaintiff received a message at 11 A. M. announcing his child's death, he set out and reached Monroe with horse and buggy by 7 or 8 P. M. There was also evidence that the child was specially attached to her father and of his mental suffering by being deprived of the opportunity of seeing her, and of possibly securing relief for her, by negligence of the defendant's agents in incorrectly transmitting the message, and in insisting upon its being correct, after being put on notice by the plaintiff's inquiry both of the operator at Albemarle and also at Salisbury.

The plaintiff requested the following instructions:

1. If the jury believe the evidence in this case, they will answer the first issue "Yes," and the second issue "No."

(Refused, and the plaintiff excepted.)

2. If the jury find from the evidence that the plaintiff asked the operator if the message was correct, and was assured by the operator of the defendant company at Albemarle that the message was correct after (he) had made inquiry at the Salisbury office of the defendant company, and that the plaintiff had a nephew at Monroe named Carl, with whom the plaintiff's children associated on a previous visit, and that after such previous visit, plaintiff's child had scarlet fever, and that plaintiff had any doubt about the correctness of the message allayed or removed by the assurance of the defendant's operator at Albemarle that the message was correct, then it was not the duty of the plaintiff to have the message repeated from Monroe, or to ask the defendant to have it done.

(Refused, and plaintiff excepted.)

3. If the jury find from the evidence that the plaintiff put the defendant on notice of the doubt he had as to the correctness of the telegram, it appearing upon its face that it was one which gave the defendant notice of its importance, it was the duty of the defendant to have repeated the message without any request of the plaintiff, and the negligence of the defendant in not having the message repeated so as to ascertain its correctness cannot be construed into negligence of the plaintiff and you will answer the second issue "No." Refused and plaintiff excepted.

These instructions should have been given. On the contrary the court instructed the jury that if they believed the evidence to answer the first issue "Yes" and the second issue "Yes." There was no foundation on which to submit the issue of contributory negligence to the jury, unless the failure of the plaintiff to have the message repeated constituted contributory negligence, and it has been held after full discussion that it was not, and even that an express stipulation on the message blanks that the company will

not be liable for delays or mistakes, unless the message is repeated, is against public policy and invalid.    *Brown v. Telegraph Co.,* 111 N. C., 187; 32 Am. St. Rep., 293; 17 L. R. A., 648.

There is no controversy as to the negligence of the defendant.   The words "Car." and "Ira" are entirely dissimilar. It may be added indeed that in the Morse alphabet, the dissimilarity is still more striking:

Car being, .. ., .——, . .., .. —— — ..

Ira being .., . .., .——,

(The commas are used here merely to indicate space between the letters.)

The Morse alphabet is referred to in *Borden v. Railroad,* 113 N. C., at p. 580; 37 Am. St. Rep., 632.   The defendant was put on notice of the urgency of this dispatch by its terms, and further of the importance of its correct delivery by the plaintiff's inquiry of its officials both at Albemarle and Salisbury.   The telegraph would fail to serve its purpose if liability for negligence could not be enforced upon such a state of facts as is herein shown.

Error.